FILED

2009 Apr-03  PM 01:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| L.L., a minor child, by and through her parents and next friends, LINDA and LEON L., | ] ] ] ] | |
| Plaintiff, | ] ] | |
| vs. | ] ] | 7:08-cv-02051-LSC |
| TUSCALOOSA CITY BOARD OF EDUCATION, SUZANNE STERLING, in her individual and official capacities; BECKY INGRAM, in her individual capacity, | ] ] ] ] ] ] ] | |
| Defendants. | ] | |

Memorandum of Opinion

I. Introduction.

The matters before this Court are Defendants' First Motion to

Dismiss (Doc. 5.) and Second Motion to Dismiss (Doc. 14.). Minor Plaintiff

L.L., by and through her parents, brings suit against the Tuscaloosa City

Board of Education (the "Board"), Oak Hill School Principal Suzanne

Sterling, in both her individual and occupational capacities, and Becky

Ingram, Oak Hill School teacher, in both her individual and occupational

capacities. L.L. claims compensatory and punitive damages, as well as attorney's fees, for injuries sustained in violation of both federal law – namely § 504 of the Rehabilitation Act; Title II of the American with Disabilities Act (the "ADA"); Title IX of the Education Amendments of 1972, and 42 U.S.C. § 1983 – and state common law, including negligent or wanton supervision/training; negligent or wanton hiring/retention; negligent or willful failure to perform ministerial acts; and conduct contrary to the requirements of law.

In their First Motion to Dismiss, Defendants assert that claims against Suzanne Sterling in her official capacity are duplicative of claims against the Board; that § 504, Title IX, and the ADA do not allow rights of action against individuals; that the Eleventh Amendment to the United States Constitution and Article I, § 14 of the Constitution of Alabama (1901) bars state law claims against the Board and Defendant Sterling; that punitive damages are barred; that negligent hiring, retention, and supervision claims against Defendant Ingram should be dismissed because she is not statutorily empowered to hire or retain employees; that Title IX precludes claims under 42 U.S.C. § 1983; and that L.L. claims no

actionable violation of Plaintiffs' constitutional rights.

Defendants also claim, in their Second Motion to Dismiss, that all claims are to due to be dismissed for failure to exhaust mandatory administrative proceedings under the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. 1400 *et seq*. In their reply brief (Doc. 18.), the Defendants argue that, if the IDEA requirement has been met, the suit should nevertheless be dismissed because the suit was filed beyond the 30 day statute of limitations period set out in the Alabama Administrative Procedures Act, ALA. CODE § 41-22-20 (1975).[1]

II. Allegations in the Complaint.

––––––––––––––––––––––

[1]Subsequent to Defendants' filing of their Second Motion to Dismiss, Plaintiffs filed a Motion to Strike, (Doc. 19.), urging this Court to strike the statute of limitations argument because it is an improperly added "new argument" that did not reply to the Plaintiffs' response. Plaintiff is correct that new arguments should not be raised in a reply brief because it does not give the opposing party sufficient opportunity to respond. *United States v. Oakley*, 744 F.2d 1553, 1556 (11th Cir. 1984). However, as discussed below, since this Court need not and does not consider the question of the limitations defense at all, the motion to strike is moot.

Furthermore, in their response to Defendants' Second Motion to Dismiss, Plaintiffs refer to certain letters and other documents in support of their defense that L.L. has in fact exhausted the required IDEA due-process procedures. Ordinarily, reference to evidence outside of the pleadings would convert a motion to dismiss into one for summary judgment. Rule 12(b). However, as discussed more fully below, the Court need not consider such information as it finds, as a threshold matter, that the IDEA exhaustion requirements are wholly inapplicable and are therefore not a defense. Thus, the Court has excluded such information from its consideration and does not convert the Second Motion to Dismiss to one for summary judgment.

According to her Complaint, L.L. is a minor child who attended Oak Hill School as an eighth-grader. Oak Hill School is a day school for the placement of students with special education requirements. L.L. suffers from severe physical and mental disabilities that require continuous observation and assistance by school personnel. She is confined to a wheelchair, cannot walk, and cannot communicate without assistance. Due to her disabilities, L.L. was receiving educational accommodations and services while at the Oak Hill School. These services included being continuously assisted and monitored by school personnel. In April 2007 (when she was 14 years of age), L.L. was left unattended in a school hallway. While L.L. was alone, another student, with a history of significant behavioral misconduct, took L.L. into an unoccupied classroom and sexually abused, assaulted, and harassed her, resulting in significant physical, emotional, and psychological injury.

III.   Motion to Dismiss.

   A.   Standard.

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim

upon which relief may be granted. To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint "does not need detailed factual allegations"; however, the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).[2]  The plaintiff must plead "enough facts to state a claim that is plausible on its face." *Id.* at 1974.

"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its

---

[2]The Supreme Court in *Bell Atl. Corp. v. Twombly* abrogated the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" set forth in *Conley v. Gibson. See Bell Atl. Corp.,* 127 S. Ct. at 1968 (quoting *Conley,* 355 U.S. 41, 45-46 (1957)).  The Supreme Court stated that the "no set of facts" standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp.,* 127 S. Ct. at 1969.

consideration to the pleadings and exhibits attached thereto.'"

*Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000)

(quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)).

All "reasonable inferences" are drawn in favor of the plaintiff. *St.*

*George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).

"[U]nsupported conclusions of law or of mixed fact and law have long

been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v.*

*Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler County,*

*Ala.*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)).  Furthermore, a

complaint may not be dismissed because the plaintiff's claims do not

support the legal theory he relies upon since the court must determine if

the allegations provide for relief on *any* possible theory. *Robertson v.*

*Johnston*, 376 F.2d 43 (5th Cir. 1967).[3]

Additionally, the Eleventh Circuit has held that "[g]enerally, the

existence of an affirmative defense will not support a motion to dismiss.

Nevertheless, a complaint may be dismissed under Rule 12(b)(6) when its

---

[3]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint." *Quiller v. Barclays American/Credit,* Inc., 727 F.2d 1067, 1069 (11th Cir. 1984). This can occur when the claim is adequately stated, but, in addition to the claim, the complaint also includes matters of avoidance that preclude the pleader's ability to recover. *Quiller*, 727 F.2d at 1067. "When this occurs, the complaint has a built-in defense and is essentially self-defeating." *Id.* "'[T]he problem is not that plaintiff merely has anticipated and tried to negate a defense he believes his opponent will attempt to use against him; rather plaintiff's own allegations show that the defense exists.'" *Id.*

     B.    Discussion.

          1. Administrative Exhaustion Requirement of the IDEA.

This Court will address the Defendants' Second Motion to Dismiss first, as a finding for the Defendant would result in a dismissal of the federal law claims without necessitating further consideration. The IDEA was enacted by Congress to ensure that every child enrolled in an institution to which the Act applies receives a "free and appropriate

public education" ("FAPE") and to ensure "that the rights of children

with disabilities and parents of such children are protected." 20 U.S.C. §

1400(d)(1)(A)-(B). To that end, the IDEA requires that suits brought under

it, or under certain other federal laws, adhere to the administrative

procedures laid out in 20 U.S.C. § 1415. Section 1415(l) provides that:

> Nothing in this chapter shall be construed to restrict or limit the
> rights, procedures, and remedies available under the Constitution,
> the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et
> seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et
> seq.], or other Federal laws protecting the rights of children with
> disabilities, except that before the filing of a civil action under such
> laws seeking relief that is also available under this subchapter, the
> procedures under subsections (f) and (g) of this section shall be
> exhausted to the same extent as would be required had the action
> been brought under this subchapter.

This exhaustion requirement is a prerequisite to any civil action

contemplated by § 1415(l), and the failure to exhaust the administrative

proceedings by requesting and participating in the Act's due-process

hearings will result in the plaintiff's civil action being dismissed. *N.B. v.*

*Alachua County School Board*, 84 F.3d 1376, 1378 (11th Cir. 1996). The

Eleventh Circuit has held that the IDEA's exhaustion requirements apply,

irrespective of whether the IDEA itself is invoked, for claims asserting

rights under the ADA, § 504 of the Rehabilitation Act, and the Constitution. *M.T.V. v. Dekalb County School District*, 446 F.3d 1153, 1158 (11th Cir. 2006). This applicability flows from the statute's language that broadens the Act's coverage to "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child." *See M.T.V.*, 446 F.3d at 1158 (interpreting 20 U.S.C. § 1415(b)(g) and holding that plaintiff's ADA, § 504, and § 1983 retaliation claims "clearly relate[d]" to the plaintiff's "evaluation and education" and therefore were due to be dismissed for failure to exhaust administrative remedies under the IDEA). *See also J.P. v. Cherokee County Board of Education*, 218 Fed. App'x 911, 913 (11th Cir. 2007) (affirming the district court's dismissal for failure to exhaust administrative remedies under the IDEA because plaintiff's injuries related "primarily" to the provision of plaintiff's FAPE). Defendants' have argued that Plaintiffs have not exhausted their required administrative procedures and their claims should be dismissed.

Determining the applicability of the IDEA to Plaintiffs' claims requires a three-step analysis. First, the Court must consider (1) whether

Plaintiffs' claims implicate § 1415(l)'s exhaustion requirement; and (2) if

so, whether the exhaustion requirement has been met; and (3) if they

have not been met, whether exhaustion is excused.

a. *Section 1415(l)'s Applicability to Plaintiffs' Claims.*

The heart of the § 1415(l) applicability inquiry is whether the basis

for Plaintiffs' claims sufficiently implicates "any matter relating to the

identification, evaluation, or educational placement of the child, or the

provision of a [FAPE] to such child." 20 U.S.C. § 1415(b)(g). Here,

Plaintiff asserts that she was sexually abused, assaulted, and harassed by

another student. Thus, the question is whether such personal injuries are

sufficiently related to the identification, evaluation, placement, or

provision of the student's FAPE so as to require administrative

exhaustion. The Eleventh Circuit has yet to expressly address whether

personal injury and abuse claims possess the sufficient nexus with the

identification, evaluation, educational placement, or the provision of the

FAPE so as to trigger § 1415(l) applicability. However, the court's

unpublished holding in *J.P.* outlines generally the probable line of

demarcation in deciding this question. The court noted, in a *per curiam*

opinion, that "[b]ecause J.P.'s alleged injuries . . . relate to the provision of his FAPE, and thus constitute *educational injuries (as opposed to physical injuries)*, Plaintiffs were required to exhaust administrative remedies before filing this court action." 218 Fed. App'x at 913-14 (emphasis added). Thus, it appears the Eleventh Circuit would treat personal injuries, as opposed to educational injuries, differently with respect to imposing the IDEA exhaustion requirement. While this opinion is only persuasive authority and not precedential under the rules of this Circuit, it is nevertheless in accordance with other courts that have considered this issue. For example, in *Witte v. Clark County School District*, 197 F.3d 1271, 1276 (1999), the Ninth Circuit reversed the district court's dismissal of claims for failure to exhaust IDEA administrative remedies. In so holding, the court partly based its decision on the fact that the plaintiffs' claims "center[ed] around physical abuse and injury." *Id*. The court then stated that "[t]he remedies available under the IDEA would not appear to be well-suited to addressing past physical injuries adequately . . . ." *Id.* In *Robb v. Bethel School District # 403*, 308 F.3d 1047 (9th Cir. 2002), the Ninth Circuit examined its holding

in *Witte*, remarking that in the latter case, "neither the genesis nor the manifestations of the abuse were educational. There was no reason to believe the plaintiff's injuries could be redressed to any extent by the IDEA's administrative procedures and remedies." *Id.* at 1054. Central to the court's holding in *Witte* was the fact that the plaintiff sought only "retrospective damages, not damages to be measured by the cost of remedial services." *Robb*, 208 F.3d at 1051 (citing *Witte*).[4] In contrast, the plaintiff in *Robb* sought "money damages to compensate them for psychological and educational injuries that the IDEA may remedy." *Id.* at 1054.

In another illustrative case, *M.Y v. Special School District No. 1*, 519

---

[4]It should be noted that the Complaint's prayer for relief requests "compensatory and punitive damages against the defendants in an amount to be determined by the Court. Additionally, the plaintiff requests that she be awarded her costs and reasonable attorneys' fees." The prayer makes no mention of remedial services, or the costs of such services, as compensation. However, ¶ 15 of the "Facts" section of the Complaint does note that "L.L. has required and will continue to require significant psychological therapy." Such therapy is most certainly the type of compensation available under the federal statutory regime for redress of "educational injury." However, the Complaint makes no further mention of this allegation; most importantly, it does not offer this assertion as the basis for any claim for damages, either specifically under any claim or, more generally, in the prayer. Thus, this statement, by itself, does not render the Plaintiffs' injuries "educational" to such a degree as to trigger § 1415(l) applicability. As discussed below, the required nexus of L.L.'s alleged personal injuries to the coverage contemplated by the IDEA is insufficient to require administrative exhaustion.

F. Supp. 2d 995 (D. Minn. 2007), the district court applied a reasoning

very similar to that in *Witte* to find that IDEA exhaustion was

inapplicable. In that case, the minor plaintiff was sexually assaulted by a

school bus driver. The court noted that:

> M.Y. seeks damages to redress injuries resulting from [the bus
> driver's] alleged sexual assault, not from her deprivation of special
> education transportation. In other words, M.Y. does not allege that
> her deprivation of special education transportation to attend
> summer school injured her. Rather, she argues that the deprivation
> of transportation led to the sexual assault that caused her injuries.
> In these narrow circumstances, IDEA's remedies do not address the
> noneducational injuries asserted by M.Y. Therefore, M.Y. is not
> required to exhaust her administrative remedies under the IDEA.

*Id.* at 1002-03.

This Court finds the opinions in *Witte* and *M.Y.*, as well as the

Eleventh Circuit's opinion in *J.P.*, to be persuasive. As in *Witte*, Plaintiff

L.L. does not seek compensation for educational injuries, but rather for

personal injuries. And, as in *M.Y.*, she does not allege that the

deprivation of the required supervision and services injured her, but

rather that the deprivation of such required supervision and services led

to the sexual assault which injured her. Accordingly, this Court holds that

the IDEA exhaustion requirements are not applicable to L.L.'s claims in

this case.

b. *Exhaustion-in-Fact and Excuse of § 1415(l)'s Applicability*.

Because L.L. is not required to exhaust the administrative

procedures, this Court need not address whether she in fact exhausted

the remedies or is excused from such exhaustion.

2. Defendants' First Motion to Dismiss.[5]

Each of the grounds asserted by Defendants in their First Motion to

Dismiss is addressed in turn below.

a. *Federal Claims Against Defendant Suzanne Sterling in her Official Capacity*.

Defendants assert that all claims against Suzanne Sterling in her

official capacity are duplicative of claims against the Board and are

_____

[5]The Plaintiffs' Response to this Motion, (Doc. 11.), seeks to couch many of Defendants' arguments as "misunderstand[ing] the complaint in several important respects" leading them to "direct[] their correct statements of law to non-existent claims." (Doc. 11.) However, the Court notes that several of the defenses that Defendants assert only arise because of the application of individual or sovereign immunity. Because the Complaint alleges all of its specific claims against "defendants," generally, it is impossible for Defendants (or the Court) to read the Complaint as clearly as Plaintiffs make out. Since complaints are to be liberally construed, and Plaintiffs did not take the time in drafting their Complaint to differentiate against whom and to what extent each of their claims apply, this Court will take Plaintiffs at their word and treat claims asserted against "defendants" as being asserted against *all* defendants.

therefore due to be dismissed. Suits brought against municipal officers in their official capacities under § 1983 have been held to be "functionally equivalent" to suits brought directly against the municipality and are therefore duplicative and not independently maintainable. *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (citing *Kentucky v. Graham*, 473 U.S. 165 (1985)). Under the reasoning in *Busby*, because Plaintiffs may (and do) bring a direct suit against the Board for violations of the ADA, § 504, and Title IX, these federal law claims against Suzanne Sterling *in her official capacity* are in reality claims against the Board. Therefore, Plaintiffs' claims under the ADA, Title IX, § 504, and § 1983 that are brought against Sterling in her official capacity are due to be dismissed.

> b. *State Law Claims Against Suzanne Sterling in her*
> *Official Capacity and Against the Board.*

Plaintiffs concede that Article 1 § 14 of the Alabama Constitution (1901) provides immunity from state law claims for the Board and Sterling in her official capacity. Therefore, these claims are due to be dismissed. The Court need not therefore address Defendants' arguments concerning

Eleventh Amendment immunity to state law claims against the Board and Sterling in her official capacity.

c. *Individual Liability Under § 504, the ADA, and Title IX.*

Plaintiffs concede that their Title IX and § 504 claims are against the Board only and not against Sterling or Ingram individually. Therefore any § 504 or Title IX claims brought against Sterling or Ingram, as individuals, are due to be dismissed.

Defendants also argue that the ADA does not provide for individual liability, an assertion which Plaintiffs dispute. Nevertheless, the Eleventh Circuit has noted that there is no individual liability under Title II of the ADA. *See Shotz v. City of Plantation*, 344 F.3d 1161, 1172 n.17 (2003) (collecting ADA cases where no individual liability attaches and citing *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999), which held that: "[Subchapter] II [of the ADA] provides disabled individuals redress for discrimination by a 'public entity.' That term, as it is defined within the statute, does not include individuals.") *See also Miller v. King*, 384 F.3d 1248, 1264 n.16 (11th Cir. 2004), *vacated on*

*other grounds by*, 449 F.3d 1149 (11th Cir. 2006) ("ADA Title II's terms do not authorize a suit against an individual; rather they subject only a "public entity" to liability."); *Badillo v. Thorpe*, 158 Fed. App'x 208, 211 (11th Cir. 2005) ("To the extent that Badillo seeks to hold Benefiel personally liable, there is no individual capacity liability under Title II of the ADA or [§ 540].") (citing *Garcia v. S.U.N.Y. Health Scis. Ctr. Of Brooklyn*, 280 F.3d 98, 107 (2nd Cir.2001)). Accordingly, Plaintiffs' Title II ADA claims brought against Sterling and Ingram, as individuals, are due to be dismissed.

### d. *Punitive Damage Awards.*

Defendants also argue that punitive damages may not be recovered under state law against the Board, that the ADA, § 504, and Title IX do not allow recovery of punitive damages, and that, because the Board is a "municipality" under *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981), it, and Sterling in her official capacity, are immune from the imposition of punitive damages under § 1983.

As a threshold matter, because the Alabama Constitution provides immunity from state law claims for the Board and Sterling in her official

capacity, the question of an award of punitive damages against them under state law is nugatory. As for the § 1983 claims, Defendants simultaneously maintain the mutually exclusive and inconsistent positions that the Board is both an arm of the state ("Because city boards of education are state government agencies. . ." (Doc.5-2.)) and a municipality, ("Consequently, the plaintiff's [sic] claim for punitive damages is disallowed under § 1983 [because of the shield to municipalities provided for by *City of Newport*].") (Doc. 5-2.)) Nonetheless, the Eleventh Circuit has clearly held that school boards in the state of Alabama are not arms of the state enjoying Eleventh Amendment immunity, but rather municipal "persons" for § 1983 purposes. *Stewart v. Baldwin County Board of Education*, 908 F.2d 1499, 1511 (11th Cir. 1990) (citing *Mt. Healthy Board of Education v. Doyle*, 429 U.S. 274 (1977)). As such, they are entitled to immunity from punitive damage judgments for claims brought under § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Thus, any claims for punitive damages against the Board brought under § 1983 are disallowed. Section 1983 punitive damages may be recovered against Sterling and

Ingram as individuals under the proper showing of proof. *Smith v. Wade*, 461 U.S. 30, 56 (1983).

Finally, the United States Supreme Court has held that punitive damages are not recoverable under § 504 of the Rehabilitation Act or under Title II of the ADA, 42 U.S.C. § 12132. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002). The Court's reasoning in *Barnes* stems from the fact that because punitive damages are not allowable under Title VI of the Civil Rights Act, and because § 504 and the ADA are interpreted consistently with Title VI, it necessarily follows that punitive damages are not allowable under § 504 or the ADA. The same reasoning would appear to hold true of Title IX since it too is interpreted consistently with Title VI. The Eleventh Circuit has not had the opportunity to expressly make this inferential step, but at least one other court of appeals has considered the question and held that, under *Barnes,* punitive damages are not recoverable under Title IX. *E.g.*, *Mercer v. Duke University*, 401 F.3d 199, 202 (4th Cir. 2005). This Court is persuaded by the reasoning in *Mercer*. Therefore, Plaintiffs' claims for punitive damages under the ADA, § 504, and Title IX are to be dismissed.

e. *State Law Claims Against Becky Ingram*.

Defendants argue that the claims against Defendant Ingram, whom the Plaintiffs refer to in the Complaint as a "Middle School Teacher," for negligent hiring, supervision, and retention, should be dismissed. They rest their argument on the grounds that Ingram has no statutory authority "to hire, train, supervise, or retain employees of the Board of Education." (Doc. 5.) Plaintiffs counter that whether or not there was statutory authority, the scope, nature, and execution of Ingram's actual duties and job performance are fact-dependent and dismissal is therefore not warranted at this stage of litigation. This Court agrees. Defendants' motion is therefore due to be denied in this respect.

f. *Preclusion of § 1983 Equal Protection Claims by Title IX*.

Defendants argue that Title IX's remedial scheme precludes § 1983 Equal Protection actions against both the Board and individual officers or employees because the § 1983 claims "arise from the same incident and seek the same relief as [L.L.'s] Title IX claim." (Doc. 5-2.) This position has been upended by the very recent and unanimous United States

Supreme Court opinion in *Fitzgerald v. Barnstable School Committee*, 129

U.S. 788, 797 (2009), where the Court held:

> we conclude that Title IX was not meant to be an exclusive
> mechanism for addressing gender discrimination in schools, or a
> substitute for § 1983 suits as a means of enforcing constitutional
> rights. Accordingly, we hold that § 1983 suits based on the Equal
> Protection Clause remain available to plaintiffs alleging
> unconstitutional gender discrimination in schools.

Thus, Plaintiffs may maintain both Title IX and § 1983 claims for gender

discrimination arising out of the same incident.

However, the Court is concerned that the Complaint does not, in

fact, properly state an Equal Protection claim under § 1983. The

pertinent section of the Complaint reads as follows:

> COUNT THREE
> Claims for Damages Under 42 USC §1983
>
> 42. The right of L.L. to be secure in her personal safety and
> bodily integrity is secured by the 14th Amendment of the
> United States Constitution.
> 43. The defendant Board maintained a policy or practice of
> deliberate indifference to the protection of L.L., who was
> rendered completely vulnerable to the assaults of a fellow
> student while in the custody and care of the Board.
> 44. The Board's training and supervision of its employees, and
> its protection of profoundly disabled students in its custody
> and care were constitutionally inadequate, and resulted in
> L.L.'s injuries.

45. The individual defendants were aware of the profound nature of L.L.'s disabilities and of her inability to protect herself or to summon assistance.

46. Upon information and belief, the individual defendants were aware of the propensity for assaultive behavior on the part of the assaulting student.

47. The individual defendants were aware of their duty to monitor L.L. at all times, and to protect her from injury by other students.

48. In spite of the awareness by the individual defendants of L.L.'s vulnerability and of the other student's assaultive behavior, the individual defendants were deliberately indifferent to L.L.'s safety and to their own duties to protect her.

49. The Board and the individual defendants were at all times relevant to this action acting under color of law, and hence are subject to the provisions of 42 USC §1983.

(Doc. 1.)

To state a claim under § 1983, the Plaintiff must allege (1) the defendant deprived the plaintiff of a right secured by the Constitution and the laws of the United States, and (2) the defendant acted under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). The Equal Protection Clause of the 14th Amendment does provide for an action under § 1983 for *gender discrimination in schools. Fitzgerald v. Barnstable School Committee*, 129 S. Ct. 788, 797 (2009). However, as can be seen from the Complaint, L.L. seeks relief on the basis of her right

"to be secure in her personal safety and bodily integrity [as] . . . secured by the 14th Amendment of the United States Constitution." (Doc. 1.) Count Three in Plaintiffs's Complaint is therefore, on its face, a claim brought under the Due Process Clause. *Albright v. Oliver*, 510 U.S. 266, 272 (1994) (plurality) (substantive due process protects "the right to bodily integrity"). It does not appear that Count Three (or the rest of the Complaint) seek relief, implicitly or expressly, under the Equal Protection Clause via § 1983. The Complaint, as currently drafted and even when liberally construed, appears to make no allegations of discrimination under the Equal Protection Clause; L.L.'s only claim for relief based on gender discrimination is under Title IX. Nevertheless, as discussed above, gender discrimination claims alleging violations of the Equal Protection Clause are actionable under § 1983 and Title IX. And – importantly – the parties each apparently agree (i.e., implicitly acknowledged by their disputations) that Plaintiffs have articulated a § 1983 claim for violations of the Equal Protection Clause of the Fourteenth Amendment. Therefore, this Court will not dismiss at this stage of litigation, for this and the reasons stated above. This Court anticipates its concerns about Plaintiffs'

claim can and will be addressed by motion at a later stage of litigation.

> g. *Student-on-student Harassment/Sexual Assault as a Substantive Due Process Constitutional Claim.*

Finally, Defendants argue that Plaintiffs have failed to allege an actionable violation of a constitutional right and that the § 1983 claim should be dismissed accordingly. As discussed above, L.L.'s § 1983 claim is, at a minimum, based on violations of the Substantive Due Process Clause of the 14th Amendment. Substantive Due Process protects individual liberty against certain government actions, irrespective of the procedural fairness used to implement them. *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). "[T]he Due Process Clause was intended to prevent government officials from abusing their power, or employing it as an instrument of oppression." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). However, as a rule (though not without exception), "nothing in the language of the Due Process Clause itself requires the State to protect life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). The Due Process Clause exerts

limitations on a State's power to act, not as a guarantee of certain

minimum levels of safety." *Id.* at 195. Only in certain limited

circumstances does the Constitution require affirmative duties of care

and protection to particular individuals. *Id.* at 198.

　　As originally defined by the Court, those circumstances exist where

(1) the State takes a person into custody, confining him against his will;

and (2) when the State creates the danger or renders a person more

vulnerable to an existing danger. *Id.* at 198-201. The Eleventh Circuit has

recognized that the Supreme Court has superceded the latter "special

realtionship/danger" category. Now, the government's affirmative acts

"rise to the level of a substantive due process violation [when] the act

can be characterized as arbitrary or conscience shocking in a

constitutional sense." *Waddell v. Hendry County Sheriff's Office*, 329

F.3d 1300, 1305 (11th Cir. 2003) (citing *Collins*, 503 U.S. at 128). "To rise

to the conscience-shocking level, conduct most likely must be 'intended

to injure in some way unjustifiable by any government interest." *Davis v.*

*Carter*, 555 F.3d 979, 982 (11th Cir. 2009) (quoting *Lewis,* 523 U.S. at

849. Conduct by a government actor that would amount to an intentional

tort under state law would not, without more, rise to the level of a constitutional violation. *See Dacosta v. Nwachukwa*, 304 F.3d 1045, 1048 (11th Cir. 2002). "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Waddell*, 329 F.3d at 1305 (citing *Lewis*).

As a threshold matter, L.L. may only succeed in her Substantive Due Process Clause claim if she can show that the Board owed her a duty to protect her from a third-party actor. As a rule, the Eleventh Circuit has held that public schools, even in light of compulsory attendance laws, generally lack the requisite control over children to impose upon such institutions a constitutional duty of protection under the custody exception. *Wyke v. Polk County School Board*, 129 F.3d 560, 569 (11th Cir. 1997). This is in keeping with the majority of the federal circuits. *See, e.g.*, *Sargi v. Kent City Board of Education*, 70 F.3d 907, 911 (6th Cir. 1995); *Graham v. Independent School District No I-89*, 22 F.3d 991, 994 (10th Cir. 1994); *Dorothy J. v. Little Rock School District*, 7 F.3d 729, 732 (8th Cir. 1993); *D.R. by L.R. v. Middle Bucks Area Vocational Technical School*, 972 F.2d 1364, 1373 (3d Cir. 1992) (en banc); *J.O. v.*

*Alton Community United School District 11*, 909 F.2d 267, 272 (7th Cir. 1990). The Complaint fails to allege any facts that would put L.L.'s situation outside of that generally experienced by any child attending public school. That is, mere compulsory attendance at a public school (which, construing the Complaint liberally in favor of L.L., accurately describes her situation while at Oak Hill) does not give rise to a constitutional duty of protection under the Due Process Clause under the custodial exception outlined in *DeShaney*.

However, under the second exception category, if the conduct of the governmental actor so "shocks the conscience," a constitutional violation may obtain. The Plaintiffs have alleged that the Defendants were deliberately indifferent to the safety of L.L and their own duties to protect her. (Doc. 1, ¶ 48.). The Eleventh Circuit has held that "deliberate indifference is insufficient to constitute a due-process violation in a non-custodial setting." *Davis*, 555 F.3d at 983 (citing the holding in *Nix v. Franklin County School District*, 311 F.3d 1373, 1377 (11th Cir. 2002)) (internal punctuation omitted).

The case of *Davis*, the Eleventh Circuit's most recent consideration

of this issue, is instructive here. In that case, Plaintiff died during

voluntary football workouts, and the parents sued for violations of their

son's substantive due process rights. The court noted that:

> Plaintiffs did not allege the coaches engaged in corporal
> punishment or physically contacted Davis. The allegations in
> the complaint do not support a finding that the coaches acted
> willfully or maliciously with an intent to injure Davis. Rather,
> the facts allege that the coaches were deliberately indifferent
> to the safety risks posed by their conduct to Davis.

555 F.3d at 984. In light of these allegations in the complaint, the court

held that "[i]n this school setting case, the complaint's allegations of

deliberate indifference, without more, do not rise to the conscience-

shocking level required for a constitutional violation." *Id.*

The case at bar is, however, distinguishable from that in *Davis*. As

in *Davis*, the Plaintiffs' Complaint does predicate relief on the

"deliberate indifference" of the Defendants. However here – and unlike

in *Davis* – that indifference is coupled with other allegations of a much

more egregious nature. Plaintiffs allege that the L.L. is so mentally and

physically disabled as to require constant supervision at all times and is

utterly dependent on school personnel for her every need and protection.

Furthermore, the Complaint alleges that the Defendants were aware of L.L.'s assailant's propensity for assaultive and abusive behavior. By contrast, there are no such aggravating facts in *Davis*. In that case, the unfortunate young man was participating in football drills and died as a result. While the death of an athlete may not be a reasonable consequence of such drills, football practice and drills are common school activities, and the evidence failed to show any malicious or intentional misconduct by the defendants or some heightened or special duty owed to the plaintiff. There is no evidence in *Davis* that the defendants were anything other than negligent – or, in other words, "only" deliberately indifferent.

However, it may be that in the instant case, as the factual record is developed, L.L.'s allegations, if shown and if coupled with "deliberate indifference," may give rise to a "conscience-shocking" violation of the Fourteenth Amendment under *DeShaney*. Therefore, Defendants' motion to dismiss Plaintiffs' § 1983 Substantive Due Process claim is due to be denied.

IV. Conclusion.

Defendants' First Motion to Dismiss will be GRANTED in part and

DENIED in part. Defendants' Second Motion to Dismiss will be DENIED.

Plaintiffs' Motion to Strike will be held as MOOT. A separate Order

consistent with opinion will be filed contemporaneously.

Done this 3rd day of April 2009.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE