
FILED
2012 Mar-28  PM 03:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| L.L., a minor child, by and through her parents and next friends, LINDA and LEON L., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 7:08-cv-2051-LSC |
| TUSCALOOSA CITY BOARD OF EDUCATION, SUZANNE STERLING, in her individual and official capacities; BECKY INGRAM, in her individual capacity, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OF OPINION

### I. Introduction

Pending is a motion for summary judgment submitted jointly by Tuscaloosa

City Board of Education ("the Board"), Rebecca Ingram, and Suzanne Sterling (Doc.

61) as to all claims by Plaintiff L.L., that survived the earlier motions to dismiss (Doc.

5, 14). Following that motion, this Court dismissed all claims brought against Sterling

in her official capacity as Principal of Oak Hill; all ADA, Title IX and § 504 claims

brought against Sterling and Ingram in their individual capacities; all claims for

punitive damages under § 1983 brought against the Board; all Alabama state law claims against the Board; and all claims for punitive damages against all defendants under the ADA, Title IX and § 504. (Doc. 21.) Still at issue are Plaintiff's claims against the Board under the ADA, Title IX, § 504 and § 1983; Plaintiff's claims against Sterling and Ingram in their individual capacities under §1983; and Alabama state law claims brought against Sterling and Ingram in their individual capacities. The issues raised in Defendants' motion for summary judgment have been briefed by both parties and are now ripe for review. Upon full consideration of the legal arguments and evidence presented, and for the reasons set forth below, Defendants' motion for summary judgment is due to be granted in part.

## II. Facts[1]

Plaintiff L.L. was an eighth grade student at Oak Hill School, which is a Tuscaloosa City School designated for students with significant disabilities. L.L. suffers from spina bifida, and as a result is paralyzed from the waist down. She also has

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

limited mental faculties, coordination, dexterity and strength. While L.L. is verbal, her voice is weak, so she requires assistance communicating.

On May 7, 2007, L.L.'s science teacher, Defendant Rebecca Ingram, was leading her class from the lunchroom back to the classroom. At some point between the lunchroom and Ms. Ingram's classroom, L.L. was left unattended and was subsequently taken to the bathroom of an empty classroom by M.M., another student at Oak Hill School. M.M. suffers from mental retardation and chromosome 2 deletion syndrome.

Melissa Mitchell, a teacher at Oak Hill School, returned to her classroom and discovered M.M. at the door to the bathroom with his hands on his pants and belt. Ms. Mitchell sent M.M. back to his classroom. Ms. Mitchell then discovered L.L. lying on the toilet in the bathroom and crying, with her diaper off, her pants around her ankles, and her shirt pulled up on one side, so that her genitals and breast were exposed. When Ms. Mitchell asked L.L. what happened, L.L. told her M.M. had been messing with her and pointed to her genital area.

Ms. Mitchell called in a teacher's aide and moved L.L. into the classroom where she was examined by the school nurse. M.M. was called into a conference room with several teachers and administrators, where he indicated via nodding and shaking

his head that he had taken L.L. to the bathroom and either had, or attempted to have, sex with her.

## III. Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

## IV.    Analysis

Defendants put forward several reasons why summary judgment should be granted. With regard to Plaintiff's claims against the Board, Defendants argue that the Plaintiff failed to exhaust mandatory procedures of the Individuals with Disabilities Educational Act (IDEA), and that the facts do not allow recovery under the ADA, § 504, Title IX, or § 1983. Regarding Plaintiff's claims against Sterling and Ingram, Defendants argue that Sterling and Ingram are entitled to qualified immunity for the claims arising under § 1983. The Court will examine each of these grounds in turn.

## A. Plaintiff's Failure to Exhaust Mandatory Procedures of the IDEA

Defendants first argue that summary judgment should be granted in their favor as to all of Plaintiff's claims for failure to exhaust mandatory administrative proceedings under the IDEA, 20 U.S.C. § 1400 *et seq.* This issue was previously addressed by the Court in its Memorandum of Opinion dated April 3, 2009. (Doc. 20.) This Court found that because L.L. seeks compensation for personal injuries, as opposed to educational injuries, the IDEA exhaustion requirements are not applicable to L.L.'s claims. (*Id.*) Because this issue was previously addressed, the Defendants do not assert any new arguments in regards to this issue, and there have not been any changes in the previously relied-upon law or precedent, there is no reason for this Court to change its earlier finding that the IDEA exhaustion requirements are not applicable to L.L.'s claims in this case.

## B. Liability Under Title IX

Defendants' Motion for Summary Judgment alleges that the Board cannot be held responsible for the student-on-student sexual harassment because they were not deliberately indifferent to sexual harassment that was severe and pervasive and that deprived Plaintiff of access to the educational opportunities or benefits provided by the school. (Doc. 61-1 at 16.) The Supreme Court of the United States has held that

"in certain narrow circumstances, a plaintiff may be able to recover for student-on-student harassment." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 650 (1999). "A court confronted with a private damages action under Title IX must ask two questions: (1) was the school board deliberately indifferent to sexual harassment about which it had actual knowledge; and (2) was the sexual harassment so severe, pervasive, and objectively offensive that it can be said to have systemically deprived the victims of access to the educational opportunities of the school?" *v. Sarasota County School Bd.,* 322 F.3d 1279 (11th Cir. 2003).

### 1. Deliberate Indifference

The Eleventh Circuit has held that a plaintiff can show deliberate indifference by proving that "the municipality knew of a need to . . . supervise in a particular area and the municipality made a deliberate choice not to take any action." *Hawkins*, 322 F.3d at 1295 (quoting *Gold v. City of Miami*, 151 F.3d 1346, 1350–51 (11th Cir. 1998)). "The deliberate indifference issue is intertwined with the question of notice since whether the Board's actions were clearly unreasonable must be measured by what was known." *Id* at 1287. Defendants first argue, "In this case, L.L. had reported no prior incidents of sexual harassment or unwanted conduct of any sort by M.M." (Doc.61-1 at 17.) However, as Plaintiff points out, the actual notice standard "does not set the

bar so high that a school district is not put on notice until it receives a clearly credible report of sexual abuse from the plaintiff-student." *Doe v. School Bd. of Broward County, Fla.,* 604 F.3d 1248 (11th Cir. 2010*) (*quoting *Baynard v. Malone,* 268 F.3d 228, 238 (4th Cir.2001)).  It is not disputed by the parties that Sterling, as principal, and Ingram, as M.M.'s teacher, are the types of school employees who must know about harassment by a fellow student in order to support a Title IX claim under *Davis*. 526 U.S. 629. Therefore, the question is whether M.M.'s conduct alerted the Defendants to a need to supervise.

### a.    Actual Knowledge

Plaintiff cites two cases in its argument that the Board was deliberately indifferent to actual knowledge:  *Doe v. School Bd. of Broward County,* 604 F.3d 1248 (11th Cir. 2010), and *Williams v. Bd. of Regents*, 477 F.3d 1282 (11th Cir. 2007). In *Doe*, a high school math teacher was twice reported by students for sexual harassment before his attack on the plaintiff, and the school's response to each of the two prior incidents was a lackadaisical investigation that did not result in any sort of disciplinary action against that teacher. 604 F.3d at 1248. In *Williams,* the student responsible for a student-on-student attack was recruited and given a full scholarship to play basketball by the defendants, despite their knowledge that he had been dismissed from

two other basketball programs for sexual harassment and sexual assault. 477 F.3d at 1282. Following the attack on the plaintiff in *Williams*, the school waited eleven months before proceeding with any type of disciplinary action. *Id.*

Those situations differ from the one in this case, where the only prior occasion that could give the Defendants knowledge of a need to supervise M.M. for possible sexual assault was an incident where M.M. was found in the hallway with another student whose pants had been pulled down below her hips. "When [the teacher's aide] asked what he was doing, M.M. pointed to his private area (genitals), and began to whine and wipe his eyes as if he were crying." (Doc. 62 at 12.) The school's response to this incident was to suspend M.M. for one day and to hold a meeting with his mother, after which transportation personnel were informed about M.M.'s behaviors and future plans were made to modify his behavior plan. (Doc. 61-1 at 18.) The Plaintiff notes other incidents that she claims should have alerted the school. These involve incidents where M.M. was making "obscene gestures toward students and teachers," including one instance where M.M. told the bus aide "'f _ _ _ you' while pulling on his privates and standing on the bus, telling the aide, 's _ _ _ me.'" (Doc. 68 at 25, Doc. 61-12 at 11.) This behavior is noted in the Behavior Intervention Plan portion of M.M.'s Individualized Education Program. (Doc. 61-12 at 11.) These

incidents do not rise to the severity of the prior incidents that provided knowledge in *Doe* and *Williams*. In this case, M.M.'s conduct of making "obscene gestures" could not have alerted anyone to a possible propensity for sexual assault. "The real world of school discipline is a rough-and-tumble place where students practice newly learned vulgarities, erupt with anger, tease and embarrass each other, share offensive notes, flirt, push and shove in the halls, grab and offend." *Davis*, 526 U.S. at 673. Even the incident where M.M. was found in the hallway with another student whose pants were pulled below her hips, while perhaps significant in hindsight, could not have alerted the school to a propensity for sexual assault. However, even if these incidents were enough to constitute knowledge of a need to supervise on the part of the Board, Plaintiffs do not show that the Board chose not to take any action.

### b. Deliberate Choice

In *Davis*, the Court found deliberate indifference where the defendants "made no effort either to investigate or to put an end to the harassment." The Court cautioned, however, that, "our conclusion here—that recipients may be liable for their deliberate indifference to known acts of peer sexual harassment—does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action."

*Davis*, 526 U.S. at 632, 648. The most notable difference between the cases cited by the Plaintiff — *Doe* and *Williams* — and the defendants in this case, is the way that the defendants in this case responded to M.M.'s conduct. As Plaintiff points out, in *Williams*, the court found that the Defendant' failure to "to take any precautions that would prevent future attacks," or to adequately discipline the assaulters "by, for example, removing from student housing or suspending the alleged assailants, or implementing a more protective sexual harassment policy to deal with future incidents," was part of the discriminatory conduct. 477 F.3d at 1297. By contrast, Oak Hill personnel responded to M.M.'s misconduct prior to the incident with L.L. by investigating the conduct, suspending M.M.'s privileges and suspending him from school, and holding parent-teacher conferences with his mother. Immediately following the incident with L.L., school officials investigated the incident, notified law enforcement, and contacted L.L.'s parents. (Doc. 61 D-404.) Also, following the incident, M.M. was temporarily placed in the "homebound educational services" until a behavioral specialist was called in to reassess M.M.'s Behavior Intervention Plan. As a result of a meeting with the behavioral specialist, it was decided that M.M. would have a one-on-one aide to accompany him during school hours. (Doc. 61-9 at 68.) Even when we draw all reasonable inferences for the Plaintiff, she cannot show

a genuine issue of material fact that Defendants acted with deliberate indifference. Although Oak Hill officials ultimately may have been ineffective in preventing M.M.'s assault on L.L., they did not act with deliberate indifference.

## 2. Denial of Access

Finally, M.M.'s assault on L.L. cannot be said to be so severe, pervasive, and objectively offensive that it can be said to have systemically deprived L.L. of access to the educational opportunities of the school. "In the context of student-on-student harassment, damages are only available where the behavior is so severe, pervasive, and objectively offensive that it denies its victims equal access to education." *Hawkins,* 322 F.3d at 1288. In *Williams*, the court found the fact that "UGA waited another eight months before conducting a disciplinary hearing to determine whether to sanction the alleged assailants [to be] further discrimination, this time in the form of effectively denying Williams an opportunity to continue to attend UGA." 437 F.3d 1282, 1297. The court went on to find that:

> The[se] . . . events differ markedly from the rarely actionable, theoretical single incident mentioned in *Davis* and *Hawkins*. The incident involved a ringleader who lured the victim to his territory and then conspired with two friends to commit two separate acts of sexual assault and so constitutes a continuous series of events. Although occurring in one room over two hours, the acts are sufficient to meet the requirements of severity and objective offensiveness. Based upon these facts, together with the discrimination that occurred before and after the incident, we

conclude that Williams has alleged sufficient facts at this stage to show that the discrimination was pervasive.

*Id* at 1298. While the event in this case is very serious, it is not the sort of severe, pervasive and objectively offensive denial of access contemplated by *Davis* and its progeny. M.M.'s attack on L.L. was a one-time occurrence and the school took immediate action to prevent future attacks from happening to L.L. or any other student. Therefore, summary judgment is appropriate as to Plaintiff's Title IX claim against the Board.

### C. No Evidence of Intentional Discrimination Violating ADA or § 504

Defendants next argue that Plaintiff cannot recover damages for their alleged violation of the ADA and §504 because she cannot show that she was subjected to intentional discrimination because of her disability.

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

While the parties agree that L.L. qualifies as an individual with a disability, the Plaintiff makes no argument to support a finding that the Board discriminated against

her because of her disability. "The Eleventh Circuit has yet to conclusively define 'intentional discrimination' in the § 504 special education context . . . [however, the Court] indicated that either a deliberate indifference or a discriminatory animus standard would apply."[2]  *K.I. ex rel. Jennie I. v. Montgomery Public Schools*, 805 F.Supp.2d 1283 (M.D. Ala., 2011). However, even when using the lower "deliberate indifference" standard, the Plaintiff cannot prevail. "Deliberate indifference requires knowledge that a federally protected right is likely to be harmed, and there must be a corresponding failure to act upon that likelihood." *Saltzman v. Bd. of Comm'rs of the N. Broward Hosp. Dist.*, 239 Fed.Appx. 484, 487 (11th Cir.2007). Plaintiff states in the complaint that, "In spite of the defendants' knowledge of L.L.'s vulnerability and of the other student's assaultive behavior, the defendants acted with deliberate

---

[2]Defendants mistakenly cite *Doe v. Alabama State Dept. Of Ed.*, 915 F.2d 651 (11th Cir. 1990), which says, "To make a claim under section 504 in the education context, something more than an IDEA violation for failure to provide a FAPE in the least restrictive environment must be shown. A plaintiff must also demonstrate some bad faith or gross misjudgment by the school or that he was discriminated against solely because of his disability." While this is quoted as the standard for claims brought under § 504 in the special education context, this standard only applies when the claim is based on an alleged failure to accommodate and is raised in conjunction with an IDEA claim. *See H. v. Montgomery County Bd. of Ed.* 784 F.Supp.2d 1247 (M.D. Ala. 2011). Here, although the defendants raise the IDEA as a defense, the plaintiff has never included violations of IDEA requirements as a claim. Defendants are also mistaken as to the standard for showing discrimination, stating that, "showing of discrimination can be made by demonstrating that a school acted in bad faith or with gross misjudgment by departing substantially from accepted professional judgment, practice or standards so as to demonstrate that the persons responsible did not base the decision on such a judgment." (Doc. 61-1 at 11.) They cite *Youngberg v. Romero*, 457 U.S. 307, 323 (1982), in support of this contention. However, that case addressed a mental patient's Fourteenth Amendment right to safe conditions of confinement and does not mention the ADA or section 504. There are no Eleventh Circuit cases that apply this standard to ADA or section 504 cases. Therefore, this Court will analyze Plaintiff's ADA and §504 claims under the "deliberate indifference" standard.

indifference, and that indifference subjected L.L. to the assaultive and harassing conduct." (Doc. 1 at 8.) As discussed in the Title IX portion of this opinion, Plaintiff cannot show that Defendants were deliberately indifferent to L.L.'s rights.

Plaintiff argues in her response to motion for summary judgment, "the failure to protect a disabled school girl from sexual assault by someone with a propensity for sexual misconduct is as sure an act of discrimination as is any architectural barrier or vehicle accommodation." (Doc. 62 at 48.) Plaintiff goes on to say, "There are many types of circumstances that create legally actionable discrimination against the disabled, and there is no rational reason to assume that a failure to protect a disabled person from sexual assault would not be among them." (*Id.*) These arguments are not persuasive and the caselaw from this Circuit does not support such a finding. *See T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cnty.*, Fla., 610 F.3d 588, 604 (11th Cir.2010) (finding no deliberate indifference on the part of a school system that placed a student with a teacher who abused the student and had a prior "proclivity toward abuse with students," because the school system "investigated all complaints of abuse that parents lodged" against the teacher, and "were unable to substantiate the complaints"); *see also JR ex rel. EAR v. Pike Cnty. Bd. of Ed.,* No. 2:06-cv-1120-MEF, 2008 WL 2438664 (M.D. Ala. 2008) (finding that the sexual abuse of the disabled

plaintiff went undetected, not because of the school's inadequate policies and training of faculty and special education students, but because nobody, including school officials and Plaintiff's parents, knew anything that would have raised their suspicions, despite being warned by a police officer concerning the assaulting teacher, and knowledge that the student had the teacher's cell phone number). Even viewing the evidence in the light most favorable to the Plaintiffs, no reasonable jury could conclude that the Board intentionally discriminated against L.L. solely by reason of her disability. Therefore, summary judgment should be granted in favor of Defendants on the ADA and § 504 claims.

### D. Liability Under § 1983

#### 1. Duty of Care

Defendants argue that Plaintiffs have failed to state a claim for which relief can be granted under § 1983. L.L. claims her Substantive Due Process rights of the 14th Amendment were violated when Defendants were deliberately indifferent to the protection of L.L.'s liberty interest in her bodily integrity. Substantive Due Process protects individual liberty against certain government actions, irrespective of the procedural fairness used to implement them. *See Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). "[T]he Due Process Clause was intended to prevent government

officials from abusing their power, or employing it as an instrument of oppression."
*County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). However, as a rule (though not without exception), "nothing in the language of the Due Process Clause itself requires the State to protect life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). "The Due Process Clause exerts limitations on a State's power to act, not as a guarantee of certain minimum levels of safety." *Id.* at 195. Only in certain limited circumstances does the Constitution require affirmative duties of care and protection to particular individuals. *Id.* at 198.

As originally defined by the Court, those circumstances exist where (1) the State takes a person into custody, confining him against his will; and (2) when the State creates the danger or renders a person more vulnerable to an existing danger. *Id.* at 198-201. The Eleventh Circuit has recognized that the Supreme Court has superceded the latter "special realtionship/danger" category. Now, the government's affirmative acts "rise to the level of a substantive due process violation [when] the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Waddell v. Hendry County Sheriff's Office*, 329 F.3d 1300, 1305 (11th Cir. 2003) (citing Collins, 503 U.S. at 128). L.L, may only succeed in her Substantive Due Process

Clause claim if she can show that the Board owed her a duty to protect her from a third-party actor.

As a rule, the Eleventh Circuit has held that public schools, even in light of compulsory attendance laws, generally lack the requisite control over children to impose upon such institutions a constitutional duty of protection under the custody exception. *Wyke v. Polk County School Board*, 129 F.3d 560, 569 (11th Cir. 1997). The Plaintiff has not alleged that L.L.'s situation was different from that of any other child attending public school such that it would trigger the custody exception. Mere compulsory attendance at a public school does not give rise to a constitutional duty of protection under the Due Process Clause under the custodial exception outlined in *DeShaney*. In a factually similar but non-binding case, a special education student was sexually assaulted by another pupil on his special education school bus. *Worthington v. Elmore County Bd. of Ed.*, 160 Fed. Appx. 877 (11th Cir. 2005). The court held that there was not a special relationship or duty on the part of the Board of Education, although Plaintiff was forced to attend a special school for children with learning disabilities and behavioral problems, forced to ride the bus, and suffered from known mental, emotional, and behavioral disabilities. *Id.* at 881. Thus, despite L.L.'s disabilities, no constitutional duty of protection was created under the custody exception in this case.

Under the second exception category, if the conduct of the governmental actor "shocks the conscience," a constitutional violation may be present.   The government's affirmative acts "rise to the level of a substantive due process violation [when] the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Waddell*, 329 at 1305 (*citing Collins*, 503 U.S. at 128). "To rise to the conscience-shocking level, conduct most likely must be 'intended to injure in some way unjustifiable by any government interest.'" *Davis v. Carter*, 555 F.3d 979, 982 (11th Cir. 2009) (quoting *Lewis*, 523 U.S. at 849). Conduct by a government actor that would amount to an intentional tort under state law would not, without more, rise to the level of a constitutional violation. *See Dacosta v. Nwachukwa*, 304 F.3d 1045, 1048 (11th Cir. 2002). "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Waddell*, 329 F.3d at 1305 (citing Lewis).

Although there are several cases in the Eleventh Circuit that discuss the "shocks the conscience" standard, there are very few cases in which the circumstances actually give rise to a constitutional violation. Only in the limited context of due-process claims based on excessive corporal punishment has the court held that the intentional conduct of a school educator may shock the conscience. *See Neal ex rel. Neal v. Fulton County Bd. of Ed.,* 229 F.3d 1069 (11th Cir. 2000) (high school coach intentionally struck a student with a metal weight lock, knocking the

student's eye out of its socket, as a form of punishment for his involvement in a fight with another student), *Kirkland v. Greene County Bd. of Ed.*, 347 F.3d 903 (11th Cir. 2003) (high school principal violated a student's constitutional rights after he struck the student with a metal cane in the head, ribs, and back for disciplinary reasons).

The Plaintiff has alleged that the Defendants knew of M.M.'s history of misconduct, but were deliberately indifferent to the safety of L.L. and their own duties to protect her. (Doc. 68 at 43.) However, the Eleventh Circuit "has been explicit in stating that 'deliberate indifference' is insufficient to constitute a due-process violation in a non-custodial setting." *Nix v. Franklin County Sch. Dist.*, 311 F.3d 1373, 1377 (11th Cir. 2002) (finding high school teacher's actions were not conscience-shocking, where student death resulted from student touching a live wire after the teacher instructed his students to hold on to the wire, informed his students they might die if they touched the exposed part of the wire, then turned away to answer a question). Plaintiff argues that the Defendants' indifference, coupled with L.L.'s vulnerability and the allegation of sexual assault, gives rise to a "conscience-shocking" violation of L.L.'s Fourteenth Amendment rights. (Doc. 68 at 43-44.) In fact, this Court noted, in its Memorandum of Opinion, that "as the factual record is developed, L.L.'s allegations, if shown and if coupled with 'deliberate indifference,' may give rise to a 'conscience-shocking' violation of the Fourteenth Amendment under *DeShaney*."

(Doc. 20 at 29.) However, as noted above, Defendants were not deliberately indifferent. Further, now that the parties have briefed this issue in light of the fully-developed factual record, this Court has seen no precedent to support the contention that a government agent's failure to protect from the intentional acts of a third party can be characterized as arbitrary or conscience shocking in a constitutional sense.

While there appear to be no factually similar cases in this Circuit, other circuits have addressed whether sexual assaults on school children can give rise to a §1983 claim against a government agent under the "special relationship/danger" category, and generally found that the school district does not have a duty to protect students from assault. *See Doe v. Hillsboro Independent School Dist.*, 113 F.3d 1412 (5th Cir. 1997) (finding no duty of school officials to protect a middle school student who was raped by a school custodian who had a known criminal record); *see also Doe v. Sabine Parish School Bd.* 24 F.Supp.2d 655 (W.D. La. 1998) (finding no duty on the part of school officials to protect a kindergarten student from sexual assault from another student with a history of sexual aggression towards other students). Specifically, the Eighth Circuit addressed a similar factual issue where a mentally retarded high school student was sexually assaulted and raped by another student who "had a history of violent and sexually assaultive behavior." *Dorothy J. v. Little Rock Sch. Dist.*, 7 F.3d 729 (8th Cir. 1993). The court in that case stated that the plaintiff's "mental retardation [does not]

alter the equation. There is no allegation that the State involuntarily placed [the plaintiff] in the [Community-Based Instruction] program. Under *DeShaney*, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf, not the individual's own limitations, that gives rise to the constitutional duty to protect." *Id* at 732. Further, that court found that the plaintiff's allegations that the defendants created a danger when they left the plaintiff and defendant alone unsupervised was "just another way of saying that the school environment creates a custodial relationship giving rise to a constitutional duty to protect," and that the claim was defeated by the general rule in *DeShaney. Id.* at 734.

Accordingly, Plaintiff has failed to establish that she falls within the narrow exceptions to the general rule that the State does not have a duty to protect life, liberty, and property of its citizens against invasion by private actors. Therefore, because the Board, Ingram, and Sterling are state actors that did not have a duty to protect Plaintiff from actions by M.M., the Board's motion for summary judgment as to Plaintiff's § 1983 claims is due to be granted.

### 2. Board Policy

Even if Plaintiff could show that Defendants had a duty to protect L.L. from M.M., Plaintiff cannot show that there was a policy or custom that deprived her of her constitutional rights. A local government body is liable under § 1983 "when execution

of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). "A plaintiff can establish § 1983 liability by identifying that she has been deprived of constitutional rights by either an express policy or a 'widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom and usage with the force of law.'" *Cuesta v. School Bd. of Miami-Dade County, Fla.*, 285 F.3d 962, 966 (11th Cir. 2002) (quoting *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991)).

   Plaintiff argues that "The Board's failures adequately to train its employees in the prevention of this type of injury and to have adequate safeguards and responsive policies to sexual harassment and assault at Oak Hill School are the types of substantive due process claims for which municipal entities may be liable." (Doc. 68 at 43.) Plaintiff cites *Canton v. Harris*, 489 U.S. 378, 387 (1989) in support of this assertion. In *Canton*, the Court stated that "if a concededly valid policy is unconstitutionally applied by a municipal employee, the city is liable if the employee has not been adequately trained and the constitutional wrong has been caused by that failure to train." *Id*. However, the Court also cautions that the "failure to train" can only be the basis of liability under §1983 in very limited circumstances, where the

failure to train amounts to deliberate indifference. *Id.* As discussed above, Defendants were not deliberately indifferent to L.L.'s constitutional rights.

### 3. Equal Protection

Finally, Plaintiff asserts that her membership in a protected class entitles her to relief. This Court expressed concern in its Memorandum of Opinion that Plaintiff did not seek relief, implicitly or expressly, under the Equal Protection Clause, however this Court stated that gender discrimination claims alleging violations of the Equal Protection Clause are actionable, and anticipated that its concerns would be addressed by motion later. (Doc. 20 at 23.) In the Nonmovant's Response to Summary Judgment, Plaintiff states, "As this Court wrote in its Memorandum of Opinion . . . the plaintiff asserts both 14th Amendment due process and (as with injuries motivated by membership in a protected class) equal protection claims under 42 USC § 1983." (Doc. 68 at 42.) This statement does nothing to clarify Plaintiff's Equal Protection claim. In fact, Plaintiff does not even identify the protected class to which L.L. allegedly belongs. "There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments . . . ." *Lyes v. City of Riviera Beach, Fla.*, 126 F.3d 1380, 1388 (11th Cir. 1997). Because Plaintiff fails

to provide any facts or arguments in support of her 14th Amendment claims, they fail as a matter of law.

### E. Qualified Immunity

In addition to the grounds already discussed, Defendants Suzanne Sterling and Rebecca Ingram seek summary judgment based on qualified immunity as to Plaintiff's §1983 claims. Qualified immunity protects government officials from civil liability when performing discretionary duties "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

The Eleventh Circuit engages in a two-part analysis to determine whether a government official is entitled to the defense of qualified immunity. "First, the official must prove that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority. Second, if the official meets that burden, the plaintiff must prove that the official's conduct violated clearly established law." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998) (citations omitted).

Sterling and Ingram argue they were acting within the scope of their discretionary authority. In determining whether a government employee is within the scope of discretionary authority, the Court looks to "whether [the acts in question]

are of a type that fell within the employee's job responsibilities." *Holloman ex rel.*

*Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). For this to be the case, the

government employee must be "(a) performing a legitimate job-related function (that

is, pursuing a job-related goal), (b) through means that were within his power to

utilize." *Id.* The inquiry is not whether it was within the defendant's authority to

commit the allegedly improper act. *Harbert Int'l,* 157 F.3d at 1282. Instead, "a court

must ask whether the act complained of, if done for a proper purpose, would be

within, or reasonably related to, the outer perimeter of an official's discretionary

duties," which "should be determined by the relation of the injury complained of to

the duties entrusted to the officer." *Id.*

Here, the assault occurred when school personnel left L.L. and M.M.

unattended at some point while leading L.L.'s class from the lunchroom back to the

classroom. Formation and implementation of procedures for supervising students are

within Defendants' discretionary duties, even if Defendants did not do all that was

required of them in carrying out those duties. Therefore, Defendants meet the first

prong for qualified immunity.

Once an official meets his burden of showing that he was acting within the

scope of his discretionary duties, then the plaintiff must prove that the official's

conduct violated clearly established law. *Harbert Int'l*, 157 F.3d at 1281. The Eleventh

Circuit mandates a two-part test to ascertain whether such an allegation has been sufficiently made.  First, the Court must determine whether the plaintiff's allegations, if true, establish a constitutional violation.  *Vinyard v. Wilson*, 311 F.3d at 1346 (11th Cir. 2002)(*citing Hope v. Pelzer*, 536 U.S. at 735 (2002)) (As a "threshold question," a court must ask, "[t]aken in the light most favorable to the party asserting the injury," do the facts establish a constitutional violation?).  Second, if the Court is convinced that a constitutional right would have been violated under the plaintiff's version of the facts, the Court must determine whether the right was clearly established at the time of the alleged violation.  *Vinyard*, 311 F.3d at 1346.  The Court will deny a public official qualified immunity only if the plaintiff convinces the Court that the constitutional right at issue was clearly established at the time of the alleged violation to the degree that these defendants had "fair warning" that their conduct violated the plaintiff's constitutional rights.  *See Willingham v. Loughnan*, 321 F.3d 1299, 1301 (11th Cir. 2003).  "In many — if not most — instances, the apparency of an unlawful action will be established by (if it can be established at all) preexisting caselaw which is sufficiently similar in facts to the facts confronting an officer, such that we can say every objectively reasonable officer would have been on 'fair notice' that the behavior violated a constitutional right." *Id*.  In addition, "[g]eneral

statements of the law contained within the Constitution, statute, or caselaw may sometimes provide 'fair warning' of unlawful conduct." *Id*.

Plaintiff alleges Ingram and Sterling "were aware of their duty to monitor L.L. at all times, and to protect her from injury by other students." (Doc. 1 at 10.) However, this is not a statement of law contained within the Constitution, statute, or caselaw. In *Worthington*, where a student was sexually assaulted on the special education school bus, the court held public schools generally do not have the requisite level of control over children to give rise to a constitutional duty to protect them from third-party actors. 160 Fed. Appx. at 877. *See also Wyke v. Polk County School Bd*. 129 F.3d 560 (11th Cir. 1997) (holding that school had no constitutional duty to protect a student from harming himself). In *Williams v. Board of Regents of University System of Georgia*, the court held that the defendants were entitled to qualified immunity, despite the allegation that they knew the past criminal and disciplinary history of plaintiff's attacker, and yet recruited him to play basketball anyway. 477 F.3d at 1301. The court found that at a minimum, the defendants acted recklessly, and that because the plaintiff failed to present any cases that show the defendants violated her clearly established equal protection rights by recruiting and admitting an individual like the attacker, she could not meet her burden under the second step of the qualified immunity analysis. *Id*. As in *Williams*, the plaintiff here does not put forth any cases

that show defendants violated her clearly established equal protection rights. Therefore, Defendants Sterling and Ingram are entitled to qualified immunity as to Plaintiff's § 1983 claim against them in their individual capacities.

### F. State Law Claims

In addition to the federal claims heretofor addressed, Plaintiff's complaint makes out the state law claims of "negligent and/or wanton supervision/training," "negligent and/or wanton hiring/retention," "negligent and/or willful failure to perform ministerial acts," and "conduct contrary to the requirements of the law." (Doc. 1 at 10-13.) Since there are no federal claims remaining, the Court may decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). In fact, the Eleventh Circuit has encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial. *Raney v. Allstate Ins. Co.* 370 F.3d 1086, 1089 (11th Cir. 2004). The remaining claims involve issues that will be resolved solely in accordance with state law, and so the Court will exercise its discretion and decline supplemental jurisdiction over the claims in counts 4, 5, 6, and 7 of the Complaint.[3] These counts will be dismissed without prejudice so that Plaintiff

---

[3] The Court's decision to decline supplemental jurisdiction to permit pursuit of the state law claims in state court is not an implied or tacit acknowledgment that the Court has found that the claims state a cause of action against any of the Defendants.

may pursue them in an appropriate state court subject to the tolling provisions in 28 U.S.C. § 1367(d).

## V. Conclusion

For the reasons stated above, Defendants' motion for summary judgment is due to be granted as to all of Plaintiffs' federal law claims. The Court will not exercise jurisdiction over L.L.'s state law claims against the defendants, therefore, those state law claims are due to be dismissed without prejudice. A separate order will be entered.

Done this <u>28</u><sup>th</sup> day of <u>March 2012</u>.

L. Scott Coogler
United States District Judge

167458